Wilson, J.
In April, 1896, a large portion of the city of Cripple Creek was destroyed by fire. Among the sufferers was the plaintiff in this case, who was there engaged in business as a wholesale and retail liquor dealer. He was absent from his place of business at the time of the fire, being in a distant part of the city, and upon his return found his house and apparently all of the contents destroyed. Covering his stock of goods, furniture and fixtures, he held a policy of insurance to the extent of $1,000 in the defendant company. Within a few days after the loss, the defendant’s agent visited Cripple Creek for the purpose of inquiring into and adjusting the losses of the company. In the mean time, the plaintiff had found and recovered a small part of his stock, to the value of about $63.00, which had been removed from the building and escaped destruction. At the request of the defendant’s agent, the plaintiff brought to him the bills for the original purchase of the goods, and also his bank account, showing his receipts from sales, so as to determine as nearly as possible the amount of stock destroyed. After investigating these, the loss for which defendant was liable was finally agreed upon between the agent and plaintiff to be $854.96. This involved some reduction from the amount which plaintiff thought he ought to receive, by reason of some disagreement between them as to the value of certain articles, also as to the amount of freight which had been paid upon them originally by plaintiff. However, they finally agreed upon the amount we have stated. Thereupon the agent made out the proofs of loss for plaintiff, fixing the *388 amount at the sum agreed upon, and these proofs, including the claim for such SUm, were signed and sworn to by the plaintiff. It was further agreed between them that the company would pay the claim immediately, instead of waiting the length of time which it could have done under the provisions of the policy, and, in consideration of this immediate payment, plaintiff agreed to discount his bill two per cent. Thereupon, at the request of the agent, the plaintiff surrendered to him his policy, and also signed a receipt— which appears to have been upon one of the blank forms used by the company — -in full of all demands upon the company. Within a few days thereafter, the agent, upon his return to his home and principal office at Pueblo, mailed to the plaintiff his draft upon the company, payable at sight, for the sum of 1837.87, being the amount at which the loss was adjusted and which the agent had agreed to pay, less the discount. To this draft was attached the receipt of plaintiff. Shortly afterwards, and before the draft was presented for payment, the agent received some information which led him to believe that the plantiff had recovered other property than that which he admitted, thus reducing his loss very considerably. He thereupon directed his company to refuse payment of the draft, which it did. Plaintiff then commenced this suit to recover the sum at which the loss had been adjusted, and which the agent had agreed to pay.
The only portion of the answer to which it is necessary to refer is the allegation that the policy contained, among other things, a condition that it should be void if the insured “ concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning said insurance or the subject thereof, or in case of any fraud or false swearing by said insured touching any matter relating to said insurance or the subject thereof, either before or after a loss; ” that this condition had been violated by the plaintiff knowingly, wilfully, and with the intent to deceive and defraud the defendant, representing and stating to defendant that his entire stock of goods, wares and merchandise, and all of his *389 furniture and fixtures were burned and destroyed, except the few articles to which we have referred of the value of $63.00, and certain goods stolen, of the value of $25.00, when in truth and in fact, just prior to the fire, plaintiff had removed from his place of business certain stock of the value of several hundred dollars, and that these were not destroyed by the fire.
A number of assignments of error upon which defendant relies are based upon the theory and contention, that, under the allegations of the complaint, the action was upon the policy of insurance. To refer to and discuss them in detail would necessitate the insertion in full in this opinion of the voluminous pleadings. In the view which we take of the case, this is not necessary, and would serve no useful purpose. We think the defendant is wrong in this contention. The complaint, as we view it, states a cause of action, upon a specific promise to pay after the adjustment of the loss. This, without further reference, disposes of all the errors predicated upon that contention.
The loss having been adjusted and the claim therefor compromised at a specific sum, and the defendant having agreed to pay this sum, the right of defendant thereafter to insist upon a forfeiture of the policy, by reason of any breach of its conditions, was waived. Wagner et al. v. Insurance Co., 143 Pa. St. 338; Smith v. Insurance Co., 62 N. Y. 85; Godchaux v. Insurance Co., 34 La. Ann. 235; Insurance Co. v. Chestnut, 50 Ill. 112; Insurance Co. v. Archdeacon, 82 Ill. 236; 2 Wood on Fire Insurance, § 450.
As said by the court in the first cited case:
“In such a case, the action is not upon the policy, but upon the agreement to pay. Neither, in such case, can it set up a breach of warranty, or of any of the conditions of the policy in defense, for adjusting the loss and promising to pay it is a waiver of all breaches on the part of the assured, and of all defenses which might have been made except for such waiver. A breach of warranty, or of any condition in the policy, must be insisted on when the. claim is made, and *390 before an agreement to pay the loss has been made. In other words, after an adjustment or compromise of the claim, it is too late to impale the plaintiffs on any of the sharp conditions sometimes found in policies of insurance.”
Even if it be true, therefore, as contended by defendant, that plaintiff falsely reported, as lost, goods which were not lost, this would not, under these circumstances, serve to wholly defeat a recovery by plaintiff. Proof of such fact would only go to the extent of reducing the recovery of plaintiff by the amount of the value of the goods so reported lost, but not lost.
Defendant strenuously insists that a number of the. instructions of the court were erroneous. In the view which we take of the character of the action, as we have stated, we must agree with him. The trial court improperly gave several instructions based upon the theory that in the trial of this action, defendant could insist upon an entire forfeiture, by proof of a breach of the condition in the policy to which we have referred. If defendant had prevailed in the action, we would, because of these instructions, have been compelled to reverse the judgment. The instructions, however, although erroneous, were without prejudice to the defendant; they were wrongfully in his favor. The only question to be tried was, whether by mistake or fraud the defendant had been induced to promise payment for a greater loss than that which had been settled. To whatever extent this could have been shown by defendant, it was entitled to have deducted from the amount which it had promised to pay. This .was a question of fact to be determined by the jury, and there was sufficient in the instructions to place this properly before the jury. There was evidence tending to show that the plaintiff had saved goods which were embraced in his proofs of loss, but the plaintiff swore positively to the contrary. The jury evidently believed his statement and rendered a verdict in his favor for the full amount claimed. The evidence was conflicting, but, there being sufficient to sustain the verdict, it must, under a well settled rule, be upheld by this court.
These views do not conflict with Fireman's Fund Ins. Co. *391 v. Barker, 6 Colo. App. 535, cited by defendant, and wherein it was said with reference to the facts of that particular case: “ The acts of the adjuster in fixing the amount of loss could not be in anything regarded as a promise to pay, or a recognition of the validity of the claim. ” In that, the loss was fixed or adjusted by an “independent adjuster, ” who, even if he had been specially authorized so to do, neither impliedly nor otherwise promised payment. On the contrary, as rebutting every presumption of any such promise, it appears that the adjuster, at the time of the adjustment, discovered violations by the assured of the conditions of the policy such as to vitiate it, and so notified the company at the time he reported the amount of loss as fixed or adjusted by him. The company thereupon refused to pay the loss. In the case now before us, there was an ascertainment or adjustment of the loss, a compromise settlement with the insured as to the amount to be paid in full of his claim, and an express promise to pay by a general agent of the company, whose authority to act for and bind the company in every respect is undisputed. It is upon this agreement to pay after adjustment of loss — plainly a new contract, independent in every particular of the original contract of insurance — the suit at bar is based.
Without referring in detail to the large number of assignments of -error, what we have said covers and settles all. Being unable to preceive any material error prejudicial to the defendant, the judgment must be affirmed.

Affirmed.